# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action Number |
| | ) 18-00293-02-CR-W-DGK |
| Trevor Scott Sparks, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Presently pending before the Court are the MOTION TO SUPPRESS [Doc. 166] and the MOTION TO DISMISS COUNT THREE OF SECOND SUPERSEDING INDICTMENT [Doc. 167], both filed by defendant Trevor Scott Sparks ("Sparks") on July 26, 2019. With respect to the former motion, on September 18, 2019, the undersigned held an evidentiary hearing. Sparks was present and was represented by his counsel, Joseph Vanover. The government was represented by Assistant United States Attorney Bruce Rhoades. At the hearing, testimony was provided by Special Agents Trisha McCormick and Ryan Williams with the Federal Bureau of Investigation. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't. #1 | Affidavit for search warrant |
| Gov't. #2a | Search warrant |
| Gov't. #2b | Search warrant return |
| Gov't. #3 | Photograph |
| Gov't. #4 | Photograph |
| Gov't. #5 | Photograph |
| Gov't. #6 | Photograph |
| Gov't. #7 | Photograph |
| Gov't. #8 | Photograph |
| Gov't. #9 | Photograph |
| Gov't. #10 | Photograph |
| Gov't. #11 | Photograph |

| | |
|---|---|
| Gov't. #12 | Photograph |
| Gov't. #14 | Photograph |
| Gov't. #15 | Photograph |
| Gov't. #16 | Photograph |
| Gov't. #17 | Photograph |
| Gov't. #18 | Photograph |
| Gov't. #19 | Photograph |
| Def't. #2 | Driving record |
| Def't. #3 | Criminal history |
| Def't. #4 | Arrest warrant |
| Def't. #6 | Mail |
| Def't. #7 | Invoice |
| Def't. #10 | Photograph |
| Def't. #11 | Photograph |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. Trisha McCormick and Ryan Williams are Special Agents with the Federal Bureau of Investigation. Tr. at 3, 73-74.

2. Agent McCormick was a case agent for a drug investigation involving Sparks. Tr. at 75.

3. As a result of the criminal investigation, on December 12, 2018, an arrest warrant was issued for Sparks. Tr. at 97.

4. Prior to December 18, 2018, Agent McCormick and other law enforcement officers undertook investigatory steps to attempt to determine possible locations where Sparks might be located and arrested. Tr. at 76.

5. On December 17, 2018, officers learned that the probation officer for Sparks' wife had observed Sparks at the residence located at 6825 Walrond Avenue. Tr. at 76-77.

6. Thereafter, Agent McCormick looked up utility and property information for 6825 Walrond and found that the property was listed in Sparks' name as was the water utility. Tr. at 76-79.

7. Agent McCormick then drove by the 6825 Walrond property and observed a vehicle parked at the residence that was recognized as belonging to Sparks (as well as a vehicle registered to Sparks' wife). Tr. at 79-80.

2

8. In September of 2018, law enforcement officers had done some controlled evidence purchases where Sparks was seen at the residence located at 5501 Smart Avenue. Tr. at 84.

9. In addition, law enforcement surveillance of 5501 Smart on December 10, 2018, had observed Sparks at the residence. Tr. at 84.

10. Moreover, multiple interviews conducted by law enforcement officers prior to December 18, 2018, had disclosed 5501 Smart as either a primary or secondary residence for Sparks. Tr. at 84-85.

11. In December of 2018, Agent Williams was the senior team leader for the FBI's SWAT team in Kansas City, Missouri. Tr. at 4.

12. In December of 2018, Agent Williams was contacted about executing outstanding arrest warrants for Sparks and other individuals including two women named Leslie Walker and Gloria Jones. Tr. at 7.

13. Ms. Walker's primary residence was 5501 Smart. Tr. at 83-84.

14. Agent McCormick communicated to Agent Williams her conclusion that Sparks' primary residence was 6825 Walrond and that 5501 Smart was a possible secondary residence. Tr. at 80.

15. Agent Williams thereafter engaged in planning the execution of arrest warrants on December 18, 2018, first, for Sparks at 6825 Walrond and, second, for Ms. Walker at 5501 Smart Avenue. Tr. at 5, 8, 43, 45-46.

16. Although 5501 Smart Avenue was identified as the primary residence for Ms. Walker, law enforcement officers also believed that Sparks might be at the location if he was not found at 6825 Walrond. Tr. at 8, 46-47, 100.

17. At 6:00 a.m. on December 18, 2018, Agent Williams and other SWAT team members knocked on the front door at 6825 Walrond and announced that they were police. Tr. at 9, 97.

18. When no one answered, the SWAT team breached the front door. Tr. at 9.

19. After entering the residence, Agent Williams encountered two females and a child. Tr. at 9.

20. Officers then did a protective sweep of the residence to determine if anyone else was present, but found no one else. Tr. at 10, 12.

21. One of the females in the residence was Ms. Jones, who was arrested. Tr. at 11, 12.

22. Agent Williams and the SWAT team then left 6825 Walrond to begin staging the execution of the arrest warrant at 5501 Smart. Tr. at 13.

23. At 7:22 a.m., Agent Williams and other SWAT team members knocked on the front door at 5501 Smart and announced that they were police. Tr. at 14.

24. When no one immediately answered, the SWAT team breached the front door. Tr. at 14, 53.

25. After entering the residence, SWAT team members observed an AR-style handgun with a double drum magazine laying on the floor in the entryway. Tr. at 15.

26. SWAT team members also observed another handgun on a couch. Tr. at 15.

27. After entering the residence, SWAT team members encountered a woman and a man, identified as Ms. Walker and an individual named Cory Hack. Tr. at 19, 20, 57.

28. Officers then did a protective sweep of the residence to determine if anyone else was present, but found no one else on the first floor or in the basement. Tr. at 28, 29.

29. In performing the protective sweep, officers observed items of contraband, including multiple firearms, currency and controlled substances. Tr. at 21, 24, 38, 41.

30. Upon questioning, both Ms. Walker and Mr. Hack denied that Sparks was in the house. Tr. at 28.

31. Officers thereafter accessed the attic space at 5501 Smart using a ladder. Tr. at 30, 31, 57-58.

32. Officers found Sparks in a corner in the attic. Tr. at 31, 32.

33. After Sparks was arrested and removed from the residence, Agent McCormick applied for and obtained a search warrant for 5501 Smart based in part of the observations made by the arrest team of contraband inside 5501 Smart. Tr. at 86.

34. The execution of the search warrant resulted in the seizure of several items of contraband. Tr. at 88.

## PROPOSED CONCLUSIONS OF LAW

## MOTION TO SUPPRESS

At the heart of Sparks' motion to suppress is the question of the propriety of law enforcement officers entering the residences at 6825 Walrond Avenue and 5501 Smart Avenue

without a warrant.  Sparks does not seriously challenge the propriety of the arrest warrant issued for him on December 12, 2018.  Moreover – assuming that the entry into 5501 Smart was itself constitutional – Sparks does not raise any substantial questions with regard to the rights of law enforcement officers to perform protective sweeps of a premises, the fact that officers saw contraband in plain sight in performing such protective sweeps,[1] and the subsequent propriety of officers applying for (and obtaining) a search warrant for the residence that resulted in the seizure of numerous items of contraband.

In addition, when questions regarding the execution of an arrest warrant are presented, an issue often arises as to whether a defendant has "standing" to assert Fourth Amendment rights.  As a general rule, before determining whether the Fourth Amendment was violated in any case, however, a court must first determine whether the defendant has established a basis allowing him or her to raise a constitutional challenge to any search or entry of a premises.  Federal courts often refer to this analysis as a question of "standing" – a terminology that Supreme Court has questioned. *See*, *e.g.*, *Rakas v. Illinois,* 439 U.S. 128, 139-40, 99 S. Ct. 421, 428 (1978).  Regardless of the terminology employed, however, the law is well-settled that "Fourth Amendment rights are personal rights that may not be asserted vicariously." *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015).  Consequently:

> [A] defendant moving to suppress bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search.

*United States v. Mosley*, 878 F.3d 246, 255 (8th Cir. 2017).  Thus, whether viewed as "standing" or an issue of substantive law, "[i]n order to show a legitimate expectation of privacy in the

---

[1] *United States v. Ford*, 888 F.3d 922, 927 (8th Cir. 2018) (in executing an arrest warrant, officers may perform a protective sweep of the premises and seize items in plain view if their incriminating character is "immediately apparent").

5

searched premises, the person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999).

In this case, however, the Court need not dive into the issue. As part of his motion to suppress, Sparks asserted:

> Mr. Sparks has standing to challenge the entry of the Walrond residence because he resided at that address. Mr. Sparks has standing to challenge the entry into the Smart residence because he was an overnight guest at that residence.

While a defendant's pleading is not ordinarily evidence, in this case, the Government has accepted as true Sparks' contentions.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, though, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States,* 364 U.S. 206, 222, 80 S. Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford,* 141 U.S. 250, 251, 11 S. Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. One such exception and central to this case involves the execution of arrest warrants. Specifically:

6

> Officers executing an arrest warrant . . . may "enter the residence
> of the person named in the warrant" [without a warrant] if they
> "have a reasonable belief that the suspect resides at and is currently
> present at the dwelling."

*United States v. Reed*, 921 F.3d 751, 755 (8th Cir. 2019) (*quoting*, *in part*, *United States v. Lloyd*, 396 F.3d 948, 952 (8th Cir. 2005)). *See also Payton v. New York*, 445 U.S. 573, 602-03, 100 S. Ct. 1371, 1388 (1980) ("[A]n arrest warrant . . . implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."). In determining whether officers had reasonable belief, a court must consider "the totality of the circumstances known to the officers prior to entry." *United States v. Ford*, 888 F.3d 922, 926 (8th Cir. 2018). Further, as recently explained by another appellate court:

> [The] reason-to-believe review here does not demand probable cause,
> it instead requires more than a hunch as to presence, but less than a
> probability. As with reasonable suspicion, reason to believe is not a
> particularly high standard. To satisfy this not particularly high
> standard, the officers need only have a basis for a reasonable belief as
> to the operative facts, not that they acquire all available information
> or that those facts exist. [Courts] have rejected the contention that the
> police must first conduct a thorough investigation to obtain evidence
> of an arrestee's actual presence before entering his residence.

*Harper v. Leahy*, 738 Fed. Appx. 716, 718 (2d Cir. 2018) (*citations omitted*).

Under the facts of this case, the Court concludes that law enforcement agents had the requisite reasonable belief that Sparks was residing at 6825 Walrond Avenue and/or 5501 Smart Avenue and was present at the addresses at the time of the attempted execution of the arrest warrant. The Court sees no contradiction or fatal inconsistency with officers having a "reason to believe" that a suspect may reside – and be found – at two different addresses. Here, officers had satisfactory contemporary operative facts that pointed to Sparks residing at both addresses.

# MOTION TO DISMISS COUNT THREE OF
# SECOND SUPERSECING INDICTMENT

Count Three of the SECOND SUPERSEDING INDICTMENT [Doc. 127] charges a continuing criminal enterprise in violation of 21 U.S.C. § 848(a), (b), (c), (s), specifically providing:

> Between on or about January 1, 2017, and December 18, 2018, [Sparks] did knowingly and intentionally engage in a continuing criminal enterprise by knowingly and intentionally violating [21 U.S.C. §§ 841, *et seq.*], which violations include, but are not limited to, the violations contained in, referenced in and supporting Count One of this superseding indictment, which violations are all re-alleged and incorporated herein as if set out word for word, and said violations were part of a continuing series of violations of [21 U.S.C. §§ 801, *et seq.*], undertaken by [Sparks], in concert with five or more other persons, which could include but not be limited to indicted and unindicted co-conspirators and others, including the defendants listed in this indictment, with respect to whom [Sparks] occupied a position of organizer, supervisor, or manager and from this ongoing criminal enterprise [Sparks] obtained substantial income or resources.
>
> Furthermore, [Sparks] was the principal administrator, organizer or leader of the continuing criminal enterprise and which involved possession with intent to distribute and distribution of a mixture or substance containing methamphetamine in an amount of at least 10,000 grams and which received $5,000,000.00 in gross receipts during any 12-month period of its existence.

Sparks argues that Count Three is "grossly overbroad," "vague," and "lacks specificity." Consequently, Sparks contends that Count Three does not fairly inform him of the charges against which he must defend and, thus, should be dismissed as violating his rights under the Fifth and Sixth Amendments.

The right to be charged by a grand jury in an indictment is guaranteed by the United States Constitution for certain crimes. Specifically, the Fifth Amendment provides that: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ." U.S. CONST. amend. V. In addition, the Sixth Amendment guarantees that: "In all criminal prosecutions, the accused shall enjoy the right . . .

to be informed of the nature and cause of the accusation. . . ." U.S. CONST. amend. VI. These rights, as well as the Fifth Amendment's due process clause, are brought to bear when a criminal defendant challenges the sufficiency of an indictment. *Russell v. United States*, 369 U.S. 749, 761, 82 S. Ct. 1038, 1045 (1962).[2]

The Supreme Court has set out a relatively simple test to determine whether an indictment is sufficient:

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

*Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907 (1974) (*citing Hagner v. United States*, 285 U.S. 427, 52 S. Ct. 417 (1932) *and United States v. Debrow*, 346 U.S. 374, 74 S. Ct. 113 (1953)). This test ensures that a grand jury has considered and found all essential elements of the offense charged. *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988).

In considering a motion to dismiss an indictment for insufficiency, the Court must make a determination from the face of the indictment. Unlike civil litigation, there is no summary judgment procedure in criminal cases nor do the rules provide for a pre-trial determination of the sufficiency of the evidence. *United States v. Nabors,* 45 F.3d 238, 240 (8th Cir. 1995); *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir. 1992). Although the Supreme Court initially set out the *Hamling* test in two prongs, the test actually includes three requirements: (1) the indictment must contain the elements of the offense charged, (2) it must put the defendant on fair notice of the charges against him, and (3) it must enable the defendant to assert a double

---

[2] The Constitutional requirements are further implemented by the Federal Rules of Criminal Procedure which specifies that an "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. . . ." FED. R. CRIM. P. 7(c)(1).

9

jeopardy defense.  *See*, *e.g.*, *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006); *United States v. O'Hagan*, 139 F.3d 641, 651 (8th Cir. 1998).   In considering these requirements, the Court must be mindful that an indictment should not be read in a hyper-technical fashion and should be "deemed sufficient unless no reasonable construction can be said to charge the offense."  *United States v. Morris*, 18 F.3d 562, 568 (8th Cir. 1998).

To that end, it is not necessary "for a particular word or phrase [to] appear in the indictment when the element is alleged 'in a form' [that] substantially states the element."  *United States v. Mallen*, 843 F.2d 1096, 1102 (8th Cir. 1988).   In general, an indictment is sufficient unless no reasonable construction can be said to charge the offense.  *O'Hagan,* 139 F.3d at 651; *United States v. Fleming,* 8 F.3d 1264, 1265 (8th Cir. 1993).

In this case, Sparks argues that Count Three does not sufficiently apprise him of "what he is accused of doing," "who he is accused of acting in concert," and "when crimes and violations occurred."  Reviewing Count Three of the Second Superseding Indictment and those portions of the indictment expressly incorporated by reference[3] into Count Three, the Court disagrees.  The level of specificity sought by Sparks is not constitutionally required.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS [Doc. 166] and the MOTION

---

[3]  Allegations made in one count of an indictment may be incorporated by reference in another count – so long as the incorporation is made clear in the indictment.  *United States v. Davila*, 964 F.2d 778, 782 (8th Cir. 1992); *United States v. Miller*, 774 F.2d 883, 885 (8th Cir. 1985) (It is well-settled, however, that each count of an indictment "must stand on its own, and cannot depend for its validity on the allegations of any other count not <u>specifically</u> incorporated. [*emphasis added*].");  *United States v. Bryant*, 430 F.2d 237, 238-39 (8th Cir. 1970); FED. R. CRIM. P. 7(c)(1) ("A count may incorporate by reference an allegation made in another count.").

TO DISMISS COUNT THREE OF SECOND SUPERSEDING INDICTMENT [Doc. 167] filed by defendant Trevor Scott Sparks on July 26, 2019.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                    */s/ John T. Maughmer*
                                                    **John T. Maughmer**
                                            **United States Magistrate Judge**